IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST John W. SHEKA, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant,

v.

John W. SHEKA, Respondent.

Supreme Court

*No. 98–2550–D. Filed April 27, 1999.*

(Also reported in 592 N.W.2d 191.)

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of John W. Sheka to practice law in Wisconsin be suspended for six months as discipline for professional misconduct in his handling of five client matters. That misconduct consisted principally of neglect, failure to keep clients informed of the status of their matters, misrepresentation to clients, and failure to cooperate with the Board of Attorneys Professional Responsibility (Board) in its investigation into his conduct.

¶ 2. We determine that the nature and extent of Attorney Sheka's misconduct warrants the suspension of his license to practice law for six months. He abandoned his professional duty to pursue client matters he had undertaken, leaving those clients without representation on personal injury claims, criminal charges, and appeal. The six-month license suspension we impose will ensure that he is not again licensed to practice law in this state without first satisfying this court that he has gained a proper understanding of his professional obligations to clients and the courts.

¶ 3. Attorney Sheka was licensed to practice law in Wisconsin in 1986 and practiced in Green Bay. He has not been the subject of a prior disciplinary proceeding, but he is suspended from the practice of law for failure to pay for fiscal year 1998 State Bar membership dues and assessments. After numerous unsuccessful attempts by the Board to contact Attorney Sheka prior to mailing its complaint to him, the referee, Attorney John E. Shannon, Jr., found that service of that complaint was made properly and granted the Board's motion for default judgment. The referee determined, based on the record, that Attorney Sheka had closed his law practice and that the Board was

unable to locate him. Accordingly, the referee made findings of fact as set forth in the Board's complaint.

¶ 4.    In the first of five matters considered in this proceeding, Attorney Sheka was retained to represent a client in a personal injury matter in July 1994. The client spoke with him several times concerning the status of her claim, and in her last contact with him, Attorney Sheka stated that the insurance company wanted to review her medical records. When the client planned to relocate to Texas, she called him and wrote him a letter informing him of her new address in June of 1996. The client was unable to contact him directly and received no response to her subsequent attempts to reach him from Texas. The client ultimately learned from a Green Bay attorney who had been assisting Attorney Sheka in winding up his practice that the statute of limitations on her claim had expired.

¶ 5.    The second matter concerned Attorney Sheka's representation of a client on a personal injury claim in early 1996. After being instructed by the client to settle the claim in late 1996, Attorney Sheka told her that the case had been settled and that the check from the insurer was in the mail. Soon thereafter he told her that he had asked the insurer to put a trace on the client's check, as he had not received it. Thereafter, Attorney Sheka did not keep any of the appointments he had scheduled with the client and did not return her telephone calls. When the client encountered Attorney Sheka in the courthouse January 6, 1997, he told her that she would have to commence legal action to recover on her claim.

¶ 6.    Soon after that encounter, the client's file was delivered to the office of another attorney in Green Bay, and the client was told she could pick it up. When she reviewed the file, the client discovered that the

only documents in it were a police report, one letter to the client, and some handwritten notes. There were no medical records or any letters to or from the insurer. The client later verified that the insurer never had heard from Attorney Sheka in the matter.

¶ 7.  In the third matter, Attorney Sheka was retained in January of 1996 to pursue a personal injury claim. The following month, he advised the client he had submitted the claim and medical documentation to the insurer. Over the following 10 months, the client made numerous appointments with Attorney Sheka to discuss the status of her claim, but Attorney Sheka canceled at least four of them. In mid-August 1996 he wrote the client a check for $100 and told her not to tell anyone he had given her money. The memo portion of the check noted "investigation services." The following month, he gave the client $100 in cash to help her with personal expenses while she was waiting to hear from the insurer on her claim.

¶ 8.  In November 1996 Attorney Sheka told the client the insurer had increased its settlement offer from $10,000 to $12,000 and advised the client to wait until the following January, as the insurer needed to close out old cases by the end of the current calendar year, and he thought it might offer as much as $18,000 thereafter. The client told Attorney Sheka in the first week of December 1996 that she was willing to accept the $12,000 offer. The following week, Attorney Sheka told her everything had been done and that the insurer already had sent a check and release forms to him for the client's signature.

¶ 9.  When the client went to Attorney Sheka's office several days later, as arranged, to sign the releases and obtain the settlement check, Attorney Sheka was not there. He had, however, left an envelope

with the client's name on it taped to his office door, inside of which was a check for $350 from Attorney Sheka with a letter stating that the insurer's check had not arrived and that his check was to help her with Christmas. The letter also stated that it appeared Attorney Sheka would have to "front" the client more money for her impending trip out of state. After discussing the matter with her husband, the client returned the check to Attorney Sheka's office with a note stating that she did not want his money but would wait for the insurer's check.

¶ 10.   Two days later, when the client spoke with Attorney Sheka about the status of the insurer's check, he told her the company had processed the check but it had been lost within one of the company's departments. Attorney Sheka told the client he was going to tell the insurer to stop payment on the lost check, issue a new check, and have it delivered by express mail to his office. When the client's husband went to Attorney Sheka's office the following day to ascertain the status of the insurer's check, the husband told him he suspected someone was lying. Thereafter, neither the client nor her husband had contact with Attorney Sheka, despite the client's numerous visits to his office and repeated telephone calls.

¶ 11.   The fourth matter concerned Attorney Sheka's representation of a man who pleaded no contest to a misdemeanor charge in December 1996. The court placed the client on probation for two years and required that he receive sexual perpetrator counseling, have no contact with the victim or the victim's family, and make restitution for the victim's counseling. When the client told Attorney Sheka that he did not agree with the result and wanted to consider an appeal, Attorney Sheka told him to call after the first of the

year. In January 1997 the client repeatedly attempted to contact Attorney Sheka regarding an appeal, but Attorney Sheka did not return his telephone calls. The client stated that as a result of the sentence, he lost his job and has not been able to gain full-time employment. The client had paid Attorney Sheka approximately $2500 for his services.

¶ 12. The fifth matter considered in this proceeding involved Attorney Sheka's representation of a client in a criminal matter that commenced in 1996. Attorney Sheka failed to appear at the scheduled final conference prior to jury trial without explanation to the court or to his client. The court was unable to locate Attorney Sheka and told the client it would be necessary for him to retain other counsel. Thereafter, Attorney Sheka appeared before the court with the client on the date of the scheduled jury trial, and the client entered a plea that resulted in his conviction.

¶ 13. Attorney Sheka did not appear at the client's sentencing hearing and had given no notification to the court or to his client that he would not be there. He also had not shared with his client the copy of the presentence report he had received. As a result, the court again told the client the appropriate method to obtain other counsel. By letter of July 29, 1997, the court reminded Attorney Sheka of his failure to appear at the sentencing hearing and of his failure to provide the client a copy of the presentence report. The court also told him that the matter had been rescheduled and asked him to contact the court by a date certain to advise whether he would appear. Attorney Sheka did not respond to the court's letter.

¶ 14. In each of these five matters, Attorney Sheka did not respond to the Board's letters inquiring into the clients' grievances. He also did not respond to

the district professional responsibility committee's investigator to whom the matter had been referred.

¶ 15. The referee concluded that Attorney Sheka's conduct in these matters violated the following Rules of Professional Conduct for Attorneys:

SCR 20:1.1 —Failure to provide competent representation.

SCR 20:1.2(a) —Failure to abide by a client's decision concerning the objectives of the representation.

SCR 20:1.3 —Failure to act with reasonable diligence and promptness in representing a client.

SCR 20:1.4(a) —Failure to keep a client reasonably informed about the status of a matter.

SCR 20:1.4(b) —Failure to explain a matter to the extent necessary to permit the client to make informed decisions regarding representation.

SCR 20:1.8(e) —Providing prohibited financial assistance to a client in connection with pending or contemplated litigation.

SCR 20:1.16(d) —Failure to take steps upon termination of representation reasonably practicable to protect the client's interests.

SCR 20:8.4(c) —Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

SCR 21.03(4) and 22.07 —Failure to cooperate with the Board's investigation.

¶ 16. As discipline for that professional misconduct, the referee recommended that Attorney Sheka's license to practice law be suspended for six months. He recommended further that Attorney Sheka be required to pay the costs of this proceeding.

¶ 17. We adopt the referee's findings of fact and conclusions of law and determine that a six-month license suspension is appropriate discipline to impose for Attorney Sheka's professional misconduct in these matters. Pursuant to the court's rules, he will not be entitled to reinstatement of his license until he has established to the satisfaction of the court that, among other things, he has the proper understanding of and attitude toward standards imposed on members of the bar, that he will act in conformity with those standards, and that he has made restitution to or settled all claims of persons harmed by his misconduct. SCR 22.28.

¶ 18. IT IS ORDERED that the license of John W. Sheka to practice law in Wisconsin is suspended for six months, effective the date of this order.

¶ 19. IT IS FURTHER ORDERED that within 60 days of the date of this order, John W. Sheka pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of John W. Sheka to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 20. IT IS FURTHER ORDERED that John W. Sheka comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.